PEOPLE v YENNIOR

OPINION OF THE COURT

1. CRIMINAL LAW—SENTENCING—TRIAL JUDGE—CONVICT'S CHARACTER —REPORT OF PROBATION OFFICER—STATUTES.

A trial judge, when sentencing a convicted defendant, must try to utilize his discovery of the criminal character or conduct of such convict and the probation officer's report on the antecedents, character and circumstances of the defendant in determining what sentence to impose (MCLA 771.1; MSA 28.1131).

2. CRIMINAL LAW—SENTENCING—DETERMINATION OF GUILT—FACT-FINDING PROCESS.

A trial court, at the sentencing of a convicted defendant, is bound by the earlier determination of guilt and it is error for the sentencing court to attempt to re-open the fact-finding process that a finding of guilt terminated.

3. CRIMINAL LAW—SENTENCING—JUDGE'S STATEMENTS—LACK OF REMORSE—CONDITIONING LENIENCY.

It was not improper for a sentencing court to note, in response to a convicted defendant's plea for probation, that the defendant had not accepted responsibility for the crime where a reading, in context, of the judge's statements does not demonstrate that the court impermissibly conditioned leniency on the defendant's admission of guilt.

4. CRIMINAL LAW—SENTENCING—SERIOUSNESS OF OFFENSE COMMITTED.

It is not improper for a judge, when sentencing a convicted defendant, to consider the relative seriousness of the offense of which the defendant was convicted.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4–6] 21 Am Jur 2d, Criminal Law § 527.

[3] 21 Am Jur 2d, Criminal Law § 564.

[7] 21 Am Jur 2d, Criminal Law § 571.

Power of trial court to change sentence after commitment or payment of fine. 168 ALR 706.

5. Criminal Law—Sentencing—Incarceration—Probation—Seriousness of Offense.

Incarceration of a convicted defendant rather than probation is proper where the sentencing court finds that it would unduly depreciate the seriousness of the defendant's offense if a sentence of probation were imposed.

Dissent by D. C. Riley, J.

6. Criminal Law—Sentencing—Absence of Remorse—Disclaimer of Guilt.

*The absence of remorse in a convicted defendant who disclaims his guilt should be disregarded in passing sentence.*

7. Criminal Law—Sentencing—Resentencing—Different Judge—Absence of Remorse— Enhancement of Sentence.

*A convicted defendant's case should be remanded for resentencing by a judge other than the one passing the original sentence where there is a distinct possibility that the defendant's refusal to admit guilt and express remorse caused the court to enhance the sentence imposed.*

Appeal from Lapeer, Norman A. Baguley, J. Submitted June 17, 1976, at Detroit. (Docket No. 26115.) Decided October 20, 1976. Leave to appeal applied for.

Larry Yennior was convicted of delivery of a controlled substance. Defendant appeals by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Edward B. Meth,* Prosecuting Attorney, for the people.

*Faintuck, Shwedel, Roether, Wolfram & McDonald,* for defendant.

Before: R. M. Maher, P. J., and D. C. Riley and R. M. Ryan,* JJ.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

R. M. MAHER, P. J. Defendant, after a jury trial, was found guilty as charged on a count of delivery of a controlled substance, phencyclidine, MCLA 335.341(1)(b); MSA 18.1070(41)(1)(b). The court imposed a sentence of 14 months to 7 years imprisonment. This Court granted defendant's application for delayed appeal, filed after the trial court denied defendant's motion for a new trial or resentencing.

This appeal raises two questions: Did the court improperly consider the fact that defendant did not admit guilt when it imposed sentence? Did the court improperly ignore defendant's antecedents, character and circumstances when it imposed sentence? An affirmative answer to either question would require that defendant be resentenced.

As trial courts frequently acknowledge, they are faced with few tasks as difficult as sentencing. Sentencing, quite often the last and most important contact a defendant has with the judicial system, is the most neglected stage of criminal proceedings.

"The dilemma of the American sentencing judge is qualitatively unique. Because our system of criminal justice has embraced to a degree unequaled elsewhere the rehabilitative ideal that punishment should fit not the crime, but the particular criminal, the sentencing judge must labor to fulfill the dual and sometimes conflicting roles of judge and clinician. Entrusted with enormous discretion, he is expected to 'individualize' the sentence he imposes to suit the character, social history, and potential for recidivism of the offender before him. Yet, because of the general absence in our system of meaningful procedures for the appellate review of sentences, he is denied standards by which to determine any particular sentence or by which to learn what decisions his fellow judges have reached in similar situations." Coffee, *The Future of Sentencing Reform:*

*Emerging Legal Issues in the Individualization of Justice.* 73 Mich L Rev 1362, 1362–1363 (1975).

Very little guidance for sentencing courts can be found in the statutes and court rules. In MCLA 769.8; MSA 28.1080, the Legislature, as authorized by Const 1963, art 4, § 45, has directed sentencing courts to impose indeterminate sentences. The statute states that the sentencing judge "shall before or at the time of passing such sentence ascertain by examination of such convict on oath, or otherwise, and by such other evidence as can be obtained tending to indicate briefly the causes of the criminal character or conduct of such convict." Similar vagueness is found in the statute requiring the probation department to provide the sentencing court with a presentence report. MCLA 771.14; MSA 28.1144 states that "the probation officer shall inquire into the antecedents, character and circumstances of such person [the defendant] * * * and shall report thereon in writing" to the sentencing court.

The sentencing court, then, must try to utilize his discovery of "the criminal character or conduct of such convict" and the probation officer's report on "the antecedents, character and circumstances of such person" in deciding what sentence it shall impose. The court may choose probation, available in all but a few very serious crimes, "where it appears to the satisfaction of the court that the defendant is not likely again to engage in an offensive or criminal course of conduct and that the public good does not require that the defendant shall suffer the penalty imposed by law." MCLA 771.1; MSA 28.1131.

GCR 1963, 785.8 says nothing about the factors the sentencing court should consider. It properly limits itself to procedural matters, including the

right of defendant and his lawyer "to advise the
court of any circumstances they believe the court
should consider in imposing sentence".

While appellate courts have clearly stated the
objectives of the indeterminate sentencing scheme,
they have provided little or no guidance on how to
best achieve the objectives of "rehabilitation of the
individual offender, society's need to deter similar
proscribed behavior in others and the need to
prevent the individual offender from causing fur-
ther injury to society", *People v Lorentzen,* 387
Mich 167, 180; 194 NW2d 827, 833 (1972). What-
ever guidance appellate courts have provided has
usually been in the form of a rebuke, pointing out
what a court should not have considered when it
exercised its sentencing discretion.

An instance of such guidance is *People v Grable,*
57 Mich App 184; 225 NW2d 724 (1974), in which a
panel of this court stated:

"[W]e believe that an accused has the right to main-
tain his innocence after conviction. No additional pen-
alty is to be imposed for continuing to proclaim one's
innocence." 57 Mich App at 188–189.

The case was remanded for resentencing because
defendant's refusal to change his story at sentenc-
ing, despite questioning by the court, may have
enhanced the sentence imposed. *Grable,* unfortu-
nately, offers little analysis and cites no authority
on what constitutes improper sentencing consider-
ations.

In the recent case of *People v Gray,* 66 Mich
App 101; 238 NW2d 540 (1975), defendant, as does
defendant in the case now before us, relied on
*Grable* in asserting that he was improperly sen-
tenced. In *Gray,* this Court rejected the contention
that it was error for the sentencing court to con-

sider defendant's lack of remorse. After pointing out that a presentence report informing the court of defendant's "antecedents, character and circumstances" is required, the opinion observes that:

"It would seem that a defendant's failure to express any remorse or regret at all concerning a prior conviction, or concerning his commission of a crime which he does not deny, would be a very relevant facet of his character. It may be noted by the probation officer. It may be taken into account by a sentencing court. We therefore hold that, if indeed the trial court did consider defendant's lack of remorse in passing sentence, such was not error." 66 Mich App at 110–111.

Defendant *Gray* had taken the stand at trial and offered a story inconsistent with guilt. The mention that he did not deny his crime should not be used to conclude that he acknowledged his guilt yet remained unremorseful.

In *Gray, Grable* was distinguished as a case in which the court attempted to get defendant to admit guilt and, failing in its attempt, enhanced his sentence. A broader reading of *Grable* would not be justified; the facts presented in *Grable* indicate that it was unnecessary for the court to decide whether, in all instances, it is improper for a sentencing court to give any consideration to whether a defendant accepts responsibility or shows remorse for his crime.

The error requiring resentencing in *Grable* was the court's attempt to reopen, at sentencing, the fact-finding process that a finding of guilt terminated.[1] See *People v Towns,* 69 Mich App 475; 245

[1] *Grable* quotes portions of the transcript that indicate defendant's sentence may have been based, in part, on the court's belief that defendant lied at trial. It is improper to punish a defendant for the substantive offense of perjury without according him his right to trial. *Scott v United States,* 135 US App DC 377; 419 F2d 264 (1969); *cf. People v Anderson,* 391 Mich 419; 216 NW2d 780 (1974).

NW2d 97 (1976). At sentencing, the court is bound
by the earlier determination of guilt. Questions
directed to defendant concerning his involvement
in the crime for which he has been convicted place
defendant in a bind. If he cooperates and gives the
answers the court obviously seeks, he may jeopard-
ize his right to appeal or a motion for a new trial.
*Miler v United States,* 255 A2d 497 (DC Ct of App,
1969). If he continues to assert his innocence in
the face of questioning (we note that juries are not
infallible, they are only conclusive), he runs the
risk of encouraging a spiteful sentence. A good
example of this second alternative is found in
*Poteet v Fauver,* 517 F2d 393 (CA 3, 1975).

How a defendant views the criminal activity
that his conviction has established can be helpful
to a court that must evaluate a defendant's "ante-
cedents, character and circumstances". We think
there is more than semantics involved in distin-
guishing between properly giving consideration to
remorse or its absence at sentencing and improp-
erly penalizing an assertion of innocence at sen-
tencing. In *People v Bottany,* 43 Mich App 375,
385; 204 NW2d 230 (1972), Justice (then Judge)
LEVIN quoted from the concurring opinion of
Judge Leventhal in *Scott v United States,* 135 US
App DC 377, 395; 419 F2d 264, 282 (1969):

" 'It is not easy for me to define why I concur in a
judgment of remand. There is a natural, and I believe
sound, disposition to adjust sanctions when an offender
admits his responsibility. This blends in with a readi-
ness to accept the conclusion that such a person has the
stuff that portends future improvement. I dare say that
many judges, possibly the overwhelming majority, re-
spond in this way, and I am not ready, at least as of
this writing, to say that their approach is inadmissible.
The wellsprings of human experience are known to
every parent concerned with bringing up children, and

who has invoked, consciously or not, Parson Weems' account of George Washington and the cherry tree.

" 'What we have before us is the difference of degree that amounts to a difference in kind. There is a line between responding favorably to an individual's sincere expression of remorse, and *reacting in a hostile way because of a personal belief in the guilt of one who maintains his innocence* and seeks review of the judgment.' " (Emphasis supplied.)

This view, of course, presents no justification for a court to harass a defendant into admitting criminal complicity at sentencing. An admission of guilt under pressure offers no insight into defendant's character that would be helpful to the sentencing court. When a defendant is aware that his responses will determine his sentence, his admission cannot evidence contrition. It does not take a sophisticated knowledge of psychology to appreciate what Chief Judge Bazelon wrote in *Scott v United States, supra,* 135 US App DC at 384; 419 F2d at 271, "[W]ith the inducement of a lighter sentence dangled before him, the sincerity of any cries of *mea culpa* becomes questionable."

In opinions of the Wisconsin Supreme Court, the distinction has been made between using an expression of remorse in mitigation of a sentence and considering a lack of remorse in sentencing. The former practice has been held permissible by the Wisconsin court, see *State v Tew,* 54 Wis 2d 361; 195 NW2d 615 (1972), *McCleary v State,* 49 Wis 2d 263; 182 NW2d 512 (1971), while the latter has been disapproved. *Scales v State,* 64 Wis 2d 485; 219 NW2d 286 (1974). We see no benefit in making this distinction. If it is permissible for a court to view expressions of remorse "as indicative of the likelihood that the rehabilitory process hoped for in the criminal law has commenced,"

*Scales v State, supra,* 64 Wis 2d at 497; 219 NW2d
at 293, why cannot a lack of remorse be considered
in projecting the course the rehabilitory process
will take. Certainly a court will note the absence
of a factor which might, if it were present, encour-
age the court to impose a particular sentence.

At sentencing in the instant case, the court
made no attempt to elicit an admission of guilt
from defendant. After a lengthy plea from defend-
ant's attorney that the court grant defendant pro-
bation, the court offered defendant his right of
allocution. Defendant simply responded: "I would
like to be given a chance to show you." The court
then commented on the situation before it; it is
from these comments that defendant draws his
first claim of error.

The court, undoubtedly in response to counsel's
urging that probation be imposed, addressed de-
fendant:

"It is rather difficult for the court to relate to one in
your position, Mr. Yennior, where you still deny that
you committed the crime of which you have been
convicted. The court doesn't hold that against you. One
of the things the court always seeks in determining
disposition in criminal matters is the attitude of the
accused with respect to whether they admit—how read-
ily they admit they have done wrong. I can't talk to you
about that because you don't admit it. That's your
prerogative. I don't hold that against you, I just want to
explain it, it makes it difficult."

This passage, seen in the context of counsel's
plea for probation and the absence· of any ques-
tioning of defendant about his involvement in the
crime for which he was convicted, does not indi-
cate that the trial court improperly enhanced
defendant's sentence for refusing to admit guilt.
Rather, it reflects sentiments akin to those Judge

Leventhal spoke of in *Scott v United States, supra.*
It displays an attitude as legitimate as the "natu-
ral * * * disposition to adjust sanctions when an
offender admits his responsibility * * * a readiness
to accept the conclusion that such a person has the
stuff that portends future improvement". We ap-
preciate the court's feeling that a plea for proba-
tion from a defendant who has not admitted re-
sponsibility presents a difficult sentencing situa-
tion for the court. Read in context, neither the
court's statement quoted above nor its similar
statement at the hearing on defendant's motion
for resentencing demonstrate that the court imper-
missibly *conditioned* leniency on defendant's ad-
mission of guilt. Rather, we think it clear that the
court merely informed defendant that the factor of
remorse or contriteness was not available to the
court as it considered defendant's request for pro-
bation. It was not improper for the court to note
that defendant had not accepted responsibility for
his crime.

We similarly find that defendant's second issue
does not merit remand for resentencing. Despite
several mentions of "policy" in the court's expla-
nation of the sentence it imposed, we are not
convinced that the court failed to exercise its
discretion in fitting an indeterminate sentence "to
the needs of the particular case and the require-
ments of society". *People v Lessard,* 22 Mich App
342; 177 NW2d 208 (1970). The court, at the hear-
ing on defendant's motion for resentencing, ex-
plained that when he spoke of a "policy" he meant
that all convictions for distribution of hard drugs
are viewed as extremely serious cases, not that all
persons convicted of distributing hard drugs are
not dealt with individually. It is not improper to
consider the relative seriousness of the offense in

imposing sentence. See *People v Shively,* 45 Mich
App 658; 206 NW2d 808 (1973). In *Shively,* this
Court pointed out that the *ABA Standards Relat-
ing to Probation* (Approved Draft, 1970) in
§ 1.3a(iii), recognizes that incarceration rather
than probation is proper where the court finds
that " 'it would unduly depreciate the seriousness
of the offense if a sentence of probation were
imposed' ". In the court's sentencing defendant to
a rather brief period of incarceration, rather than
probation, we find no error.

Affirmed.


R. M. RYAN, J., concurred.


D. C. RILEY, J. *(dissenting).* The majority seems
to impart two, somewhat contradictory, lessons in
the case at bar.

On one hand, the majority reaffirms its ostensive
support of *People v Grable,* 57 Mich App 184; 225
NW2d 724 (1974), and on the other it cites with
apparent approval *People v Gray,* 66 Mich App
101; 238 NW2d 540 (1975).

*Grable* held that a remand for resentencing by a
different judge is warranted where a sentencing
court "may have enhanced the sentence imposed"
*(Id.* at 189) in response to a convicted defendant's
adamant, post-verdict proclamations of innocence:

> "[W]e believe that an accused has the right to main-
> tain his innocence after conviction. *No additional pen-
> alty is to be imposed for continuing to proclaim one's
> innocence."* *Grable, supra,* at 188–189. (Emphasis
> added.)


In *Gray, supra,* a panel of this Court, interpret-
ing *Grable* as factually inapposite, held that lack
of remorse for an *undenied* crime may be taken

into account at sentencing. If the facts in *Gray* clearly support such a proposition, I would not be dismayed by the holding; sadly, however, they do not. As the majority recognizes, defendant Gray at trial "offered a story inconsistent with guilt". At sentencing, however, the trial court in *Gray* commented on the mention made by probation officials of Gray's supposed lack of remorse without elaborating on how the probation authorities arrived at this conclusion. Despite the absence of documentation concerning Gray's reported lack of contrition, this Court concluded that defendant Gray did not deny his guilt. Without the benefit of the probation report, I would not have reached the same conclusion quite so readily.

At any rate, it is clear that a defendant, who in fact admits his guilt yet eschews regret for his actions, reveals by his unrepentance a relevant facet of his character that can be considered at sentencing. It is quite another matter, however, to say that a defendant, who personally or through his counsel maintains his innocence even after a guilty verdict, should be penalized for failing to express remorse regarding a crime he denies committing. This is precisely the kind of "additional penalty" that *Grable, supra,* condemns. *People v Towns,* 69 Mich App 475, 479; 245 NW2d 97 (1976).

If as the majority suggests "[a]n admission of guilt under pressure offers no insight into defendant's character that would be helpful to the sentencing court", then the fact, rather than the source, of such pressure should be determinative. Whether the pressure to admit guilt and show remorse flows directly from a judge's badgering questions or obliquely from the subtle inducement of the present decision, the evil is the same.

On reflection, it should be immediately apparent

that inducing an assertedly innocent defendant to admit guilt and pressuring, albeit indirectly, a defendant to express remorse for a crime whose perpetration he denies are but two sides of the same coin. By its decision today, the Court bestows its imprimatur on, and thus encourages, the long-standing practice by which defendants, whether innocent or guilty, are motivated to appear contrite in the hope of reaping a lenient sentence. Why we should exalt such an unfortunate tactic to the level of doctrine escapes me completely.

Another disturbing aspect of the present decision is that, despite a laudable effort to clarify this muddled area, the majority perpetuates the confusion. At one point, the majority opinion indicates that a judge may "properly giv[e] * * * consideration to remorse or its absence at sentencing". Yet later in the opinion we are told that a court may note "the absence of a factor which might, if it were present, encourage the court to impose a particular sentence". There is more than a mere semantic difference between giving consideration to the absence of remorse and noting the absence of remorse as a factor to be disregarded in passing sentence. Without a clarification of its precise holding, the case at bar, rather than serving as a beacon to sentencing judges, enshrouds them in still greater darkness.

Assuming one accepts the more limited version of the majority's holding, namely, that a judge may inform a defendant who is reluctant to admit guilt that remorse is not among the mix of factors to be weighed in passing sentence, the facts in the present case are illsuited to such a proposition. The lower court did more than merely relay this information to defendant. The following statement of the court below at the hearing on defendant's

motion for resentencing, taken together with the judge's similar statement at sentencing, convinces me that the judge's remarks were in essence thinly guised invitations to the defendant to recant his misdeed:

"I am sure you have heard before, we still have the situation where the defendant refuses to admit he is guilty. If ever a man is going to be rehabilitated effectively, the first thing he has got to do is say I am [guilty], admit it, and then I am sorry. We always run into a problem where somebody is convicted in the trial, if they pled guilty, then they are saying I am guilty, to go through the trial and still deny it afterward, then you have a problem then (sic). If you are guilty, why don't they admit it, isn't that the first step in rehabilitation, *that is always a fact to be considered by the Court,* and the attitude of the person toward the crime that was committed." (Emphasis added.)

I believe that enhancing the defendant's sentence because he declined the judge's not so subtle invitations to admit guilt is just as egregious as the error found in *Grable, supra.* The absence of remorse in a convicted defendant who disclaims his guilt should be disregarded in passing sentence.

This does not mean, however, that an expression of contrition by a defendant who acknowledges his crime should be ignored by the sentencing court. Rather, a sentencing judge should strive to temper with a healthy skepticism "the natural tendency to adjust [the] sanctions" imposed on a repentant defendant. The courts should be leery of a defendant's newfound, and possibly feigned, declarations of penitence. I trust that this state's seasoned trial judges, having frequent opportunity to assess the credibility of persons appearing before them, will

be able in most cases to distinguish the sincere from the contrived.

Before closing, one last point should be addressed. I agree with the majority that the lower court's frequent reference to a "policy" concerning defendants convicted of drug delivery offenses was not improper once the judge explained that policy related to the gravity of such crimes and not to a refusal to individualize the sentences imposed. However, I would caution sentencing courts to refrain from the use of the term "policy" or phrases of like import in passing sentence because, as this case illustrates, such terms may engender the misimpression that the individualization of sentencing is a rule honored more in the breach than the observance.

I would remand this case for resentencing by a different judge because of the distinct possibility that defendant's refusal to confess guilt and express remorse caused the court to enhance the sentence imposed.