PEOPLE v STUBBS

Docket No. 46436. Submitted June 6, 1980, at Grand Rapids.—Decided August 27, 1980.

Walter D. Stubbs was convicted of felonious assault in Berrien Circuit Court, James E. Hoff, J. The defendant appeals alleging that the trial court erred in refusing to give instructions requested by the defense and by considering the defendant's lack of remorse at the time of sentencing. *Held:*

1. A trial judge is required to give instructions on the theories of the parties if they are requested and supported by some evidence. Here the requested instructions were either not appropriate defenses to the charged offense, or had no supporting evidence in the record.

2. It is improper for a trial judge to enhance a defendant's sentence because the defendant refuses to admit guilt. Here, however, the judge merely considered behavior of the defendant which demonstrates a disregard for legal processes and a lack of respect for the law, which are proper considerations in sentencing.

Affirmed.

1. CRIMINAL LAW — JURY INSTRUCTIONS — THEORIES OF PARTIES.

A trial judge is not required to give instructions on the theories of the parties where, even though requested the, instructions are either not appropriate defenses to the charged offense or have no supporting evidence in the record.

2. CRIMINAL LAW — ENHANCEMENT OF SENTENCES — ADMITTING GUILT.

It is improper for a trial judge to enhance a defendant's sentence because the defendant refuses to admit guilt, but behavior of a defendant which demonstrates a disregard for legal processes and a lack of respect for the law is a proper consideration in sentencing.

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 653, 654.
[2] 21 Am Jur 2d, Criminal Law § 525 *et seq.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *Angela Baryames,* Assistant Prosecuting Attorney, for the people.

*Stancati & Marovich, P.C.,* for defendant on appeal.

Before: R. B. BURNS, P.J., and MACKENZIE and J. T. KALLMAN,* JJ.

MACKENZIE, J. The defendant was charged with two counts of felonious assault, MCL 750.82; MSA 28.277. On May 4, 1979, a Berrien County Circuit Court jury found the defendant guilty as to one count and not guilty as to the second. Defendant was sentenced to nine months imprisonment and appeals his conviction as of right.

The defendant's contention that the trial court erroneously refused to give instructions requested by the defense is without merit. A trial judge is required to give instructions on the theories of the parties if they are requested and supported by some evidence. GCR 1963, 516.7, *People v Lester,* 406 Mich 252; 277 NW2d 633 (1979), *People v Stephens,* 84 Mich App 250; 269 NW2d 552 (1978). In this case, we find that the requested instructions were either not appropriate defenses to the charged offense or had no supporting evidence in the record.

We find the defendant's contention that the trial court committed error at sentencing by considering the defendant's lack of remorse also lacking in merit. At sentencing, after a plea for leniency by defendant's attorney, the following comments were made by the court:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"THE COURT: Mr. Stubbs, is there anything you would like to say to me, personally, on your own behalf, in addition to what Mr. Zausner said?

"THE DEFENDANT: Nothing, your Honor.

"THE COURT: Mr. Stubbs, on September 27th of 1977, you broke into the residence home of your cousin, Ralph Steven Smith. Your intent, as your attorney says, your purpose, was to take your wife, Kalane's child, Micah, from the Smith home and return her to your own home in Michigan City, Indiana. That came through loud and clear in the trial; it comes through in the report. I believe that to be the fact.

"You were successful in what you set out to do, but in the process of doing it, you assaulted Micah's father, Ralph Steven Smith, with a dangerous weapon, a piece of broken window glass which had a sharp cutting edge.

"In listening to the trial and reviewing the Presentence Report, I find that you knew there was a Court order that had permitted temporarily for Micah to be with her father, in his home.

"I find as a fact that you had been in this very courthouse, perhaps this courtroom, I don't know, but certainly this courthouse, that very day, and you had been informed of that Court order.

"I also find that you knew, you knew that very day, on September 27th, that a formal court hearing had already been scheduled three days in the future, namely on Friday, September 30th, to hear the question and determine the question as to whether there should be a change in custody for Micah.

"In spite of this, and you chose not to wait for that court hearing, you decided upon self-help, and here are some of the things that have happened as a result of that fateful decision on your part.

"First of all, obviously, as I pointed out, you were successful, you got Micah, and returned her to your wife. That is one thing that happened, you returned her to your wife.

"Another thing that happened, the court hearing that was scheduled for September 30th, was not held, because your wife, Kalane, did not appear, nor did Micah.

"You, of course, knew there would be repercussions

from the violent acts that had taken place, and so when you and your wife and Micah got back to your home in Michigan City, you disrupted your whole life, your life, Micah's life, your wife's life, and you packed a few things and you left hurriedly for Florida, that very same night.

"Of course, you gave up your employment. After about six months, and to your eternal credit, you did return voluntarily to Michigan, to face the music; be arrested, and be tried on the charges that had been instituted against you.

"But another event that has transpired is that your wife, Kalane, has never returned, nor has Micah, and so it is a said fact that a father and a daughter have not seen each other since that fateful late afternoon, early evening, of September 27th, 1977.

"Another sad fact, sir, involves your own family. You have caused a rift in it. Relatives that are common to you and to your cousin, Ralph Smith, are no longer on speaking terms.

"You know, Mr. Stubbs, you appear to me to be a very capable and very talented man. You have a clean record, with the law, except for this particular episode. You have a good employment record, yet in this one particular matter you chose to place yourself above the law, disregarding the law, violating the law.

*"I have given the matter of your sentence very careful thought. Probation to me seems inappropriate in your case, partly because of your attitude towards the law, which is that I, Stubbs, am superior, that I, Stubbs, am superior to any Court of justice, and I will take matters in my own hands to settle matters to my own satisfaction, in my own way.*

*"And it also seems inappropriate because I still get the feeling, sir, that you still don't think you have ever done anything wrong.*

"All right. It is the judgment and the sentence of this Court that you be confined in the Berrien County Jail for nine months. Against that sentence, you shall receive credit for one day of jail time already served." (Emphasis added.)

Defendant claimd the italicized language was error under *People v Yennior,* 399 Mich 892 (1977), and *People v Grable,* 57 Mich App 184; 225 NW2d 724 (1974). We disagree. In *People v Grable,* the trial court argued with the defendant that he must be lying about being innocent because three or four witnesses had testified otherwise. The court ruled out probation and gave the maximum sentence, stating:

"THE COURT: Very well, the first problem in rehabilitation is to find a man that will at least be honest with himself and society. If I can't establish that, then, I don't have much hope on rehabilitation or probation". 57 Mich App 188.

The holding of this Court in *Grable* was that it is improper to enhance sentence because of refusal of the defendant to admit guilt.

Similarly, in *People v Yennior, supra,* the Supreme Court stated that a court cannot base its sentence even in part on a defendant's refusal to admit guilt. The facts here do not parallel *Yennior* or *Grable.* There was no denial by this defendant of guilt following conviction. Defendant declined to exercise his right to speak when the court inquired whether he had anything to say personally on his own behalf. Defendant had not testified at trial.

The trial court, at the hearing on motion to vacate sentence, responded directly to defendant's claim that the court had weighed defendant's lack of remorse and failure to admit guilt:

"He [defendant] was in court, he knew 3 days later there would be a full-fledged hearing to determine in a court of law who would have custody of Micah, whether there should be a change, and instead of that he used the self-help principle, so taking it into that context, it's

not a question of talking about criticizing him for not admitting guilt or predicating any sentence upon the man because he wouldn't acknowledge guilt, but it's in the context of imposing self-help as against having the patience to wait 3 days and avail himself of due process of law."

This illustrates that defendant's self-help behavior was weighed in determining the sentence. The sentencing court was rightfully considering that, at the time of the commission of the assault, defendant was engaged in a deliberate course of action to obtain the physical custody of a child contrary to an order of the Berrien County Circuit Court.

The court was not indicating an intent to sentence based upon defendant's failure to show remorse or defendant's refusal to admit guilt; rather, the court was considering behavior of the defendant which demonstrated a disregard for legal processes and a lack of respect for the law. This is a proper consideration in sentencing.

A Maryland case, *Mahoney v State,* 13 Md App 105; 281 A2d 421; 64 ALR3d 1219 (1971), *cert den* 409 US 978; 93 S Ct 306; 34 L Ed 2d 241 (1972), involved the trial judge at the sentencing proceedings conducting a wide-range inquiry into the defendant's life, then the judge asking whether defendant intended to file an appeal.

The Maryland court disapproved of the inquiry as to whether defendant would appeal but did not find reversible error, stating at 112:

"We have held that the matter of sentencing within the limits of the law is peculiar to the trial judge and will not be reviewed by this Court unless dictated by passion, prejudice, ill-will, or other unworthy motive. See *Johnson v State,* 9 Md App 37, 39 [262 A2d 325]

(1970). *Minor v State,* 6 Md App 82 [250 A2d 113] (1969), *Gee v State,* [2 Md App 61; 233 A2d 336 (1967)]."

The statutory maximum for the felonious assault conviction in this case is four years, so the sentence of this defendant to nine months in the county jail was well within limits. In *People v McLott,* 70 Mich App 524; 245 NW2d 814 (1976), this Court recognized the wide discretion of the trial court in matters of sentencing when the sentence is within statutory limits. See also *People v Alsteens,* 49 Mich App 467; 212 NW2d 243 (1973). We will not disturb the sentence.

Affirmed.